NATHANIEL JOHNSON, ADMINISTRATOR OF THOMAS JOHNSON v. SAMUEL D. ALLEN.

Where the defendant's return upon his collector's warrant of the sale of a horse for taxes was read without objection, it was held to be at least *prima facie* evidence of the facts returned: *Held*, also, that unless the objection is taken at once when the evidence is first introduced and its bearing seen, it will ordinarily be deemed to be waived.

Where such return shows a seizure and sale of a horse for the taxes of A., proof that the collector also attempted to retain out of the surplus avails of the sale the amount of the taxes of B., who held a mortgage from A., of the same horse, would alone have no legal tendency to contradict the return.

Whether a collector's warrant is to be deemed returnable process, *quære*.

TROVER for the value of a horse alleged to have been wrongfully taken and converted by defendant.

Plaintiff put in evidence a chattel mortgage of said horse from one

Charles L. Johnson to said Thomas Johnson, executed in due form and dated Oct. 15, 1866, and recorded in Richmond the day following, and that defendant took and sold said horse on the 12th day of January, 1867.

Defendant offered evidence tending to show that at the annual town meeting legally notified and holden in Richmond, in said county, in March, 1866, three selectmen were legally chosen and qualified; that said Charles L. Johnson was a resident in said Richmond, on the first day of April, 1866, and that said selectmen duly assessed a tax against said Charles, on said first day of April, amounting to $5.52; that said defendant was duly chosen and qualified as collector of taxes for said Richmond for the year 1866; that said selectmen seasonably committed to said collector of taxes a warrant containing a list of all the taxes assessed in said town, in 1866, and authorizing the defendant to collect the same; among which taxes was that against said Charles L. Johnson, and another against said Thomas Johnson, amounting to $6.90, and that defendant took said horse as a distress for the taxes of said Charles L. and advertised and sold the same as the property of said Charles L. Johnson, to pay his said tax. Defendant also introduced evidence tending to show that the mortgage aforesaid from said Charles L. to Thomas Johnson was fraudulent and void as against said Charles' creditors, and upon this point there was much evidence on both sides. As evidence of defendant's doings under his aforesaid warrant, he introduced his return which was annexed to the original warrant, which was received and read in evidence without objection. Said return is annexed marked A, and is made a part of this case.

Plaintiff thereupon asked the court to rule that this return of the defendant was insufficient as a justification of defendant's acts in taking and selling said horse, and that it was incumbent on the defendant to introduce his original advertisement and written notices and all other original papers pertaining to the sale. But the court held that the defendant's return, being in the case without objection, was *prima facie* evidence of the facts stated therein, to which plaintiff excepted. Plaintiff also offered to show that said defendant's return aforesaid, had been written by defendant's counsel, since the commencment of this suit. But as no question was made but what the defendant's signature to the same was genuine, the court excluded the evidence and the plaintiff excepted. Plaintiff then offered in evidence certain records of the town of Richmond as made by the town clerk of said town, a copy of which is annexed marked B, and made part of the case. Plaintiff also offered to prove that this record was made by the town clerk from original papers made and signed by the defendant and furnished by him to said clerk, and also offered to produce said original papers from the clerk's office. Plaintiff also offered in evidence the paper annexed, marked C, which is made part of this case. This evidence in papers B and C was offered for the purpose of contradicting the return of defendant as introduced by himself, and of showing that defendant did not sell the horse as the property of Charles L. Johnson, and that said defendant's return which he had introduced was not true.

To this evidence the defendant objected, on the ground that the defendant's return having been admitted was conclusive, and could not be contradicted, and also upon the ground that the evidence offered had no legitimate tendency to contradict said defendant's said return or to invalidate the same, and was therefore irrelevant and immaterial, and the court excluded the same and plaintiff excepted.

The court instructed the jury that, if from the evidence before them, they found that said tax against Charles L. Johnson was legally assessed, the town would stand in position of a creditor of said Charles, at the time he made said mortgage; and if they found that defendant had proceeded legally in the sale of said horse as against said Charles L. Johnson, the only question for them to settle was whether said mortgage from Charles L. to Thomas Johnson was valid or void as against said Charles' creditors, and gave the jury proper instructions on that point to which no exception was taken, and directed them if they found said mortgage valid as against said Charles' creditors to return a verdict for plaintiff, but if invalid and void to return a verdict for defendant.

The jury returned a verdict for defendant, which plaintiff moves the court to set aside.

A.

STATE OF NEW HAMPSHIRE, ⎱
CHESHIRE, ss.        ⎰
January 12, 1867.

By virtue of the foregoing warrant to me as collector of taxes of the town of Richmond, in said county, I notified the said Charles L. Johnson, of said Richmond, on the thirtieth day of June, A. D. 1866, that his tax committed to me to collect, as collector of said Richmond, amounted to $5.52, and requested him to pay the same; and the said Charles having neglected so to do, on the 7th day of January, 1867, I took by distress one iron gray horse, as the property of said Charles, to secure the payment of said taxes, and on the 11th day of January, aforesaid, at said Richmond, said taxes and the costs and charges not having been paid, I posted up the following notice at the store of Daniel R. Spaulding, and a like notice at the Union store, being public places in said Richmond, as follows:

"January 11, 1867.
DISTRESS FOR TAXES.

Taken as a distress for taxes, and will be sold at public auction for cash, at the store of Daniel R. Spaulding, in Richmond, in the county of Cheshire, on Saturday, the twelfth day of January, 1867, at 3 o'clock in the afternoon, one iron grey horse, called six years old.

SAMUEL D. ALLEN, Collector."

And on the twelfth day of January, at the time and place aforesaid, at 3 o'clock P. M., I sold said horse at public auction, to Stephen Ran-

dall, he being the highest bidder, for the sum of sixty dollars, deducting from which said taxes $5.52, and the reasonable costs and charges, $3.67, amounting to $9.19, leaves in my hands $50.81.

SAMUEL D. ALLEN, Collector for A. D. 1866, in Richmond.

B.

STATE OF NEW HAMPSHIRE, }
CHESHIRE, ss.
Richmond, January 7, 1867.

Taken this day by distress for taxes against Charles L. Johnson, his taxes are five dollars and fifty-two cents, and Thomas Johnson his taxes are six dollars and ninety cents, an iron grey horse to pay said taxes and incidental charges, they having neglected to pay the same.

SAMUEL D. ALLEN, Collector.

Received Jan. 8, 1867.    Recorded by Jarvis Ingalls, Town Clerk.
A true copy—Attest:        JARVIS INGALLS, Town Clerk.

Richmond, Jan. 12, 1867.

To Charles L. Johnson : The following is an account of your taxes for which an iron grey horse has been taken as a distress by me, the subscriber, and sold this twelfth day of January, 1867, at public auction, and also an account of my fees and charges of keeping and sale with the amount of the sale of said horse ; your taxes are five dollars and fifty-two cents, ($5.52,) for taking and keeping, two dollars and seventeen cents, ($2.17,) for advertising and selling and recording, one dollar and fifty cents, ($1.50,) amounting to nine dollars and nineteen cents, ($9.19.) Said horse sold to Stephen Randall, he being the highest bidder, for sixty dollars. I have this day taken six dollars and ninety cents on the strength of a certain mortgage held by Thomas Johnson, it being the amount of said Thomas Johnson's taxes, balance due said Charles L. Johnson and Thomas Johnson, forty-three dollars and ninety-one cents.

SAMUEL D. ALLEN, Collector.

14.    Paid Charles L. Johnson's wife twenty dollars and forty cents. Trusteed by Union store to retain the balance, twenty-three dollars and fifty-one cents, at fifteen minutes past two o'clock in the afternoon.

SAMUEL D. ALLEN, Collector.

A true copy—attest:        JARVIS INGALLS, Town Clerk.

C.

STATE OF NEW HAMPSHIRE, }
CHESHIRE, ss.
Richmond, January 7, 1866.

To Thomas Johnson : Your taxes left in my hands for collection are six dollars and ninety cents, for the payment of which I have this day taken your right according to a mortgage in an iron grey horse. If

said taxes with incidental charges are not paid within four days from the above date, I shall advertise the said horse and sell him at auction, to satisfy the same.

SAMUEL D. ALLEN, Collector.

*F. F. Lane*, for defendant.

1. It is not claimed by the defendant that a collector's warrant is, technically, a returnable process, for it is not required to be returned to any person or authority; but it does not necessarily follow that what is usually termed the return of an officer and which is in fact a record of his doings, may not as properly be made by a collector on serving his warrant as by a constable on serving an execution, and with the same effect. The main effect of such record in civil suits is the protection of the parties and the officer by securing permanent legal evidence of what has been done, and the manner of doing it. And in view of the numerous steps to be taken and acts to be done by a collector, before he can sell property to satisfy a tax, the reasons are equally strong for his making a record of his doings and for giving it the same form, as for other officers; otherwise it would seem necessary for him to have constantly on hand a witness, for his own security.

The statute provision seems to be broad enough to confer this authority, or right upon collectors. It gives them the "powers vested in constables in the service of civil process;" Gen. Stats. p. 124, sec. 1; and constables are authorized to serve and return writs directed to them, like sheriffs; Gen. Stats. 401–5; and make a record of their doings. Now one of the most important powers in serving civil process, both to the officer and parties, is the power to make a record of his doings as evidence; and this is as important for a collector in discharging his official duties as for a constable.

The statutes of 1786, which were in force when *Davis* v. *Clement*, 2 N. H. 290, was decided, gave highway surveyors no such powers as are now given to collectors, nor were the statutes then in force relating to the powers of collectors as broad as those in force at the present time.

2. In this case the record of the doings of the collector were read to the jury without objection. And any objection to the evidence was waived, just as if the defendant had testified on the stand. *Hayes* v. *Thorn*, 28 N. H. 386; *Foss* v. *Strafford*, 25 N. H. 78.

3. The papers B and C do not contradict the defendant's evidence, nor show that the horse was not sold as Charles L. Johnson's, but sustains both points. The fact that they refer to Thomas Johnson's mortgage of the horse and his tax, is not inconsistent with this view.

4. It was not objected at the trial that the evidence showed the horse was kept only three days before advertising its sale. This objection now comes too late as there may have been a mistake in this evidence which could have been corrected at the trial. *Boyce* v. *Cheshire Railroad Co.*, 46 N. H. 627; *State* v. *Rye*, 35 N. H. 368.

5. But, as against the defendant, the mortgagee, Thomas Johnson, had no rights whatever to the horse. His claim was founded in fraud

and was void.. This the jury distinctly found. He had neither a general nor special property in him; possession, nor the right of possession; and cannot, therefore, maintain trover against the defendant for taking it. *Esty* v. *Graham*, 46 N. H. 169; *Odiorne* v. *Colley*, 2 N. H. 66, and cases.

The defendant rightfully took the horse as Charles L. Johnson's, sold it as his, and must account for it or its proceeds to him, and cannot be required to take any notice of the plaintiff's fraudulent claim to him, nor be held to answer to a suit founded on such claim, for any irregularity, if any there were, in disposing of the horse. This view does the plaintiff no wrong. He ought not to stand on the same grounds as an honest owner, protecting honest rights to property.

*Woodward & Wellington*, for plaintiff.

In *Kelly* v. *Noyes*, 43 N. H. 209, it is settled that a warrant for the collection of taxes is not a returnable process under our statute. The law does not require the collector to make any return of his doings under such a warrant. If, therefore, a return is made upon such a warrant, it is not competent evidence for the collector, of anything it states. So the court held in *Davis* v. *Clement*, 2 N. H. 390, and intimated the same doctrine in *Kelly* v. *Noyes* above referred to. In this case, although the defendant's pretended return was in without objection, yet the original papers of the collector were the best evidence of what the collector did do, and therefore he was bound to produce them. The defendant's pretended return is not only not an official act, but it has not even the sanction of an oath to support it. However false it may be he is not responsible to any person. *Davis* v. *Clement, ubi supra.*

If the return had been sworn to it might have had the force of an affidavit, but it can only be regarded as a statement of the defendant by his attorney, who read it. It was not legal evidence of anything for the defendant after it was admitted, any more than verbal declarations not under the sanction of an oath would be. We think, therefore, that the court should have ruled that the said return was not *prima facie* evidence of the things therein stated.

It appears to be a well settled doctrine in this State, that a collector's return can be contradicted and impeached for any purpose material to the case. The original papers and all evidence verbal or written that tended to contradict or impeach the defendant's return, should have been admitted. *Davis* v. *Clement, Kelly* v. *Noyes*, above cited.

Again, as the court ruled at the trial that said pretended return of the defendant could not be contradicted, it remained the conclusive evidence of the doings of the collector. By that return, the defendant did not comply with the statute, whereby his proceedings were void, and he himself could not stand in the position of a creditor. The horse was taken the 7th of January, and he kept it until the 11th of the same month, when he posted up his notices. This makes only three days, and the law gives the tax-payer four days. Compiled Statutes, sec. 6, p. 124; *Lefavour* v. *Bartlett*, 42 N. H. 555.

BELLOWS, J.   In *Davis* v. *Clement*, 2 N. H. 390, it is held that a highway warrant is not returnable process, and that the return of the surveyor is no better evidence than his own declarations would be, and this is put upon the ground that the statute has not made it his duty to make any return of his doings upon his warrant, although the law then in force, N. H. Laws, ed. 1815, 388, authorized surveyors to make distress in the same manner as the several collectors and constables are enabled by law to do, in collecting the State taxes.

Upon the same ground it would seem that the warrant to the collector of taxes was not returnable process, inasmuch as the statute did not require a return to be made ; but, on the contrary, required a particular account of the taxes, goods sold, and the expenses to be delivered to the tax-payer in case of distress and sale ; and, in case of arrest and commitment, requires him to leave with the jailor an attested copy of his warrant with the amount of the tax and the fact of commitment certified thereon ; and in case of the sale of non-resident land for taxes, it is provided that an account of sales shall be filed in the town clerk's office with the advertisements, and a copy is made evidence.

The present law is much the same as that of 1791 in its general features, except it is provided that a collector of taxes, in the service of his warrant, shall have the powers by law vested in constables in the service of the civil process which shall continue until all the taxes in his list are collected ; but the statute does not require a return upon the warrant.

In *Kelly* v. *Noyes*, 43 N. H. 209, it was supposed that this change in the law did not make the collector's warrant returnable process, although the question was left undecided.   Without undertaking now to decide it, we think the return which was received without objection, was at least *prima facie* evidence of what was stated therein as clearly as if the defendant had without objection testified to it.

If this evidence was so received, and no objection made at the time, it would be too late to object afterwards in the argument to the jury. The objection should be made indeed as soon as the bearing of it is seen, otherwise it will in general be deemed to be waived.   This is distinctly decided in *Bassett* v. *Salisbury Manufacturing Co.*, 28 N. H. 452, where it is laid down that the objection should be taken at once when the evidence is first introduced and its bearing seen, and if a party fails to do so, he will be taken to have waived the objection, holding that there is no rule of practice in courts which rests on more secure foundation, or is more universally adopted than this ; and it is put upon the ground that if seasonably taken the other party will have an opportunity to obviate the objection.

In the case before us, the court ruled that this return was in without objection, and must be regarded as *prima facie* evidence of the facts therein stated ; and under the circumstances we cannot say that the exception ought to have been allowed, or the instructions asked for given. We think, then, that there was no error in holding that the return so read was *prima facie* evidence of the facts stated therein.

The question, then, is, whether the evidence offered by the defendant

and contained in the papers' recorded by the town clerk, and other papers and evidence as to originals, ought to have been received.

It was offered apparently to contradict the return of the defendant, and to show that the horse was not seized and sold for the taxes of Charles L. Johnson, or as his property. It does not appear that it was offered in connection with other testimony tending to prove that fact; but we should understand that this was the only testimony to that point. If so, we think it was rightfully excluded as having no legal tendency to contradict the return. These papers tend to show, in fact, that the horse was sold for the taxes of Charles L. Johnson, and as his property. It is true that these papers also tend to show that the collector attempted to reach the interest of one Thomas Johnson, against whom he had a tax, in the same horse by virtue of a mortgage to him from Charles L. Johnson; and to retain out of the surplus beyond Charles L. Johnson's tax, the amount of Thomas Johnson's tax. But we think there is nothing in that which legally tends to prove that the horse was not sold as stated in the return. No exception was taken at the trial to the time the horse was kept before it was advertised, and we think it is now too late.

There must, therefore, be

*Judgment on the verdict.*